STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2020 CA 0602

S&P INVESTMENTS, LLC, ON TRACK INVESTMENTS, INC.,
AMORI DILA FAMIGLIA, LLC, SAM TALLO, AND PATRICIA TALLO

VERSUS

TRUNG NGUYEN, FRANCIS NGUYEN, SUPERKING SEAFOOD, LLC,
MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,
AND SCOTTSDALE INSURANCE COMPANY

CONSOLIDATED WITH

2020 CA 0603

SCOTTSDALE INSURANCE COMPANY AS SUBROGEE OF/AND
S&P INVESTMENTS, LLC, AND AMORI DILA FAMIGLIA, LLC

VERSUS

SUPERKING SEAFOOD, LLC, TRUNG NGUYEN,
DAU THI NGUYEN, FRANCIS NGUYEN,
AND MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

Decision Rendered: **JAN 2 5 2021**

* * * * * * *
APPEALED FROM
THE 21st JUDICIAL DISTRICT COURT
TANGIPAHOA PARISH, LOUISIANA
DOCKET NUMBERS 2017-0000020 and 2017-1056

HONORABLE WILLIAM J. BURRIS, JUDGE PRO TEMPORE

* * * * * * *

<table>
<tr><td>Troy Allen Broussard<br>Lafayette, Louisiana</td><td>Attorney for Defendant/1st Appellant,<br>Mesa Underwriters Specialty<br>Insurance Company</td></tr>
<tr><td>Peter B. Sloss<br>Timothy D. DePaula<br>Tarryn E. Walsh<br>New Orleans, Louisiana<br>and<br>Andre G. Coudrain<br>Patrick G. Coudrain<br>Hammond, Louisiana</td><td>Attorneys for Plaintiffs/2nd Appellants,<br>S&P Investments, LLC, On Track<br>Investments, Inc., and Amori Dila<br>Famiglia, LLC</td></tr>
<tr><td>Darrin M. O'Connor<br>Ashley G. Haddad<br>Covington, Louisiana</td><td>Attorneys for Defendant/Appellee<br>Lacox Propane Gas Company</td></tr>
</table>

**BEFORE:  McDONALD, HOLDRIDGE, and PENZATO, JJ.**

**McDONALD, J.**

In these consolidated suits, the district court rendered a summary judgment in favor of a propane gas dealer, finding that the summary judgment evidence failed to create a genuine issue of material fact as to the dealer's liability for fire-related damages to the plaintiffs' business. The district court signed a judgment dismissing all claims against the dealer with prejudice. The plaintiffs and a co-defendant insurer separately appeal from the adverse judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 10, 2016, a fire occurred at Superking Seafood in Hammond, Louisiana. The fire spread to Lee's Drive Inn restaurant, an adjacent business. Trung and Dau Thi Nguyen own the Superking Seafood building; Superking Seafood, LLC operates a grocery and seafood business there; and, Francis Nguyen is a member of Superking Seafood, LLC (collectively, Superking). S&P Investments, LLC and On Track Investments, Inc. own the Lee's Drive Inn building and equipment therein, and Amori Dila Famiglia, LLC operates Lee's Drive Inn restaurant (collectively, S&P).

After the fire, it was determined the fire originated in Superking Seafood's boiling room, where Superking was using multiple burners to boil crawfish. The burners were connected to an exterior propane tank installed at Superking Seafood over five years earlier by Lacox Propane Gas Company (Lacox), a propane gas dealer. In January 2011, Lacox service technician Jody Wild installed a 250-gallon propane tank, and the Louisiana Liquefied Petroleum Gas Commission (LPGC) approved the installation. In March 2011, Mr. Wild returned, at Superking's request, and switched that tank out for a 500-gallon tank. According to Mr. Wild, when he switched the tanks, he ran the new tank's pressure up to 10 pounds per square inch (psi) to test for leaks, but he then lowered and set the tank's pressure to 5 psi, the maximum allowed by applicable regulations. After the March 2011 installation, Mr. Wild did not return to Superking Seafood. Lacox's route salesmen, however, continued to refill Superking Seafood's propane tank on a regular basis. According to

Lacox route salesman Frank Brister, he last refilled the Superking Seafood tank on April 3 and 7, 2016, seven and three days before the fire. After the fire, the propane tank regulator showed the psi setting at 18 psi, 13 pounds over the allowable 5 psi limit.

S&P filed suit against Superking and Mesa Underwriters Specialty Insurance Company (MUSIC), Superking Seafood, LLC's insurer, and against Scottsdale Insurance Company (Scottsdale), S&P's insurer, for fire-related damages to Lee's Drive Inn.[1] S&P later added Lacox as a defendant. Scottsdale filed a separate suit against Superking, MUSIC, and also later added Lacox as a defendant. The district court consolidated the suits.

In due course, Lacox filed a motion for summary judgment seeking dismissal from the suits. Lacox claimed the plaintiffs could not prove Lacox's negligence contributed to the fire, and, hence, there were no genuine issues of material fact as to its lack of liability for fire-related damages. Superking Seafood, LLC, Francis Nguyen, S&P, and MUSIC filed oppositions to Lacox's motion. After a hearing, the district court issued reasons for judgment, and, on January 15, 2020, signed a judgment granting Lacox's motion for summary judgment and dismissing all claims against Lacox with prejudice. MUSIC appealed and S&P appealed. Scottsdale did not appeal.

## ASSIGNMENTS OF ERROR

On appeal, S&P and MUSIC contend the district court erred in granting summary judgment to Lacox because there are genuine issues of material fact as to: (1) Lacox's improper installation of the propane system at Superking Seafood, and (2) Lacox's constructive knowledge of the unreasonable risks of harm associated with the propane system. They also contend the district court erred in granting summary judgment because: (1) the court failed to evaluate Lacox's liability under the higher standard of care Lacox owed as a natural gas dealer; (2) the court erred in allowing

---

[1] Sam and Patricia Tallo originally were also named plaintiffs, but the district court later dismissed their claims. On S&P's motion, the district court also later dismissed S&P's claims against Scottsdale.

Lacox to rely on affirmative defenses that Lacox waived by failing to adequately plead them; and (3) even if adequately pled, Lacox failed to meet its burden of proof under the affirmative defenses.

## SUMMARY JUDGMENT

Appellate courts review the grant or denial of a motion for summary judgment *de novo* under the same criteria governing the district court's determination of whether summary judgment is appropriate. *James v. Anderson,* 16-1361 (La. App. 1 Cir. 6/29/17), 224 So3d 413, 417. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966A(3).

The summary judgment movant maintains the burden of proof. La. C.C.P. art. 966D(1). Nevertheless, if the movant will not bear the burden of proof at trial on the issue before the court on the motion, his burden is satisfied by pointing out an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and, if appropriate, the court shall render summary judgment against him. La. C.C.P. arts. 966D(1) and 967B; *Jefferson v. Nichols State Univ.,* 19-1137 (La. App. 1 Cir. 5/11/20), ___ So.3d ___, 2020 WL 2315584 *1, *writ denied,* 20-00779 (La. 11/4/20), 303 So.3d 623.

## DISCUSSION

### Affirmative Defenses

We first address whether Lacox waived the right to assert affirmative defenses in support of its motion for summary judgment by failing to adequately plead them in its answers. S&P correctly points out that, under La. C.C.P. art. 1005, any matter constituting an affirmative defense shall be set forth in a defendant's answer.

4

However, neither S&P nor any other party filed a copy of Lacox's answers in support of or in opposition to Lacox's motion for summary judgment. Under La. C.C.P. art. 966D(2), we may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Because Lacox's answers were not filed in accordance with La. C.C.P. art. 966D(2), we cannot determine if Lacox adequately pled affirmative defenses and thus find this assignment of error meritless.

### Burdens of Proof

To prevail in their negligence suit, the plaintiffs would bear the burden of establishing Lacox was at fault in causing the fire, using a duty-risk analysis. This analysis usually requires proof of five separate elements: (1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). *Bonin v. Ferrellgas, Inc.,* 03-3024 (La. 7/2/04), 877 So.2d 89, 94; *Jones v. Centerpoint Energy Entex,* 11-0002 (La. App. 3 Cir. 5/25/11), 66 So.3d 539, 545.

To prevail on the summary judgment here, Lacox's burden does not require that it negate all essential elements of the plaintiffs' negligence claim; rather, Lacox's burden is satisfied by pointing out, with proper supporting documents, an absence of factual support for only one or more elements essential to the plaintiffs' claim - *i.e.,* cause-in-fact, breach, duty, legal cause, damages. *See* La. C.C.P. art. 966D(1); La. C.C.P. art. 966, Comments – 2105, Comment (j). The burden then shifts to S&P and MUSIC, the non-moving parties, to produce factual support, through the use of proper documentary evidence attached to their oppositions, which establishes the existence of a genuine issue of material fact or that Lacox is not entitled to judgment

5

as a matter of law. La. C.C.P. art. 966D(1).

## Duty of Liquefied Petroleum Gas Dealer[2]

Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the following substantive law applicable to this case. *Jones v. Anderson,* 16-1361 (La. App. 1 Cir. 6/29/17), 224 So.3d 413, 417. The LPGC makes and enforces rules and regulations governing the installation of liquefied petroleum gas tanks or systems and the installation and use of liquefied petroleum gas appliances. *See* La. R.S. 40:1846A. The LPGC rules provide that a dealer shall not serve any liquefied petroleum gas system that the dealer knows is improperly installed or in a dangerous condition. La. R.S. 40:1846B(3); LAC 55:IX.139A. All improper systems shall be corrected before the dealer services such system with fuel for the first time. LAC 55:IX.139A. However, a servicing dealer shall not be responsible for unauthorized changes in or failures of an existing system or connected appliances that have been tested, checked, and found in compliance with LPGC rules and regulations. LAC 55:IX:139A. In an action for damages against a liquefied petroleum gas supplier, it shall be an affirmative defense that the damage was caused by the alteration, modification, or repair of liquefied petroleum gas equipment/appliances, if the alteration, modification, or repair was done without the supplier's knowledge. *See* La. R.S. 40:1846H(1).

Citing to case law, including *Price v. Coppus Engineering Assoc.,* 515 So.2d 589 (La. App. 1 Cir. 1987), S&P and MUSIC claim the district court failed to consider that Lacox had a "heightened duty" as a propane gas dealer to protect its customers and the public. However, neither S&P nor MUSIC can refute that the current applicable law and regulations only impose liability on Lacox *if it has knowledge* of a dangerous condition, or an unauthorized change in or failure of an existing propane system or connected appliances, or of an alteration or modification of propane

---

[2] The parties do not dispute that propane is a "liquefied petroleum gas" within the definition set forth in La. R.S. 40:1842(1) and that Lacox is a "liquefied petroleum gas dealer" and a "supplier" within the definitions set forth in La. R.S. 40:1842(2) and 40:1846H(1), respectively.

equipment. *See* La. R.S. 40:1846B(3) and 40:1846H(1); LAC 55.IX.139A. There is no question that liquefied petroleum gas is an inherently dangerous substance, and must be handled with a care commensurate with its dangerous qualities; however, those who handle such commodities are not insurers of any mishap. Liability attaches only on due proof that the handler violated a duty owed to the person harmed. *See Knockum v. Amoco Oil Co.,* 402 So.2d 90, 97 (La. App. 1 Cir. 1980). Thus, as set forth in La. R.S. 40:1846B(3) and LAC 55:IX.139A, a liquefied gas handler is not responsible for the consequence of a defect in a plaintiff's gas system of which he had no knowledge or control. *See Price,* 515 So.2d at 598 (finding gas supplier correctly dismissed by directed verdict when there was no evidence that supplier knew or should have known of customer's unsafe practices with gas after delivery); *Mitchell v. Cohen,* 432 So.2d 922, 924-25 (La. App. 4 Cir. 1983) (noting that a gas supplier is not liable for defects beyond the meter, if there is no proof that he knew or was obliged to know of the defect). In sum, as applicable here, a propane gas supplier must have knowledge of a dangerous condition or of unauthorized changes in or failure of an existing system or connected appliances, or of an alteration or modification of propane equipment, before it can be responsible for damages caused by any such condition.

### Summary Judgment Evidence

In support of its motion, Lacox claims it had no knowledge of and did not set the Superking Seafood regulator pressure at 18 psi, did not know of anyone else who set the pressure at 18 psi, was not aware at any time that the pressure was at 18 psi, and had received no complaints or requests from Superking regarding the regulator pressure. Lacox's summary judgment evidence shows as follows.

Mr. Wild, the Lacox employee who installed the original 250-gallon propane tank, testified in his deposition that he set the regulator at 5 psi in January 2011 as required by National Fire Protection Association regulations,[3] and an LPGC inspector approved the installation. At Superking's request, Mr. Wild returned in March 2011

---

[3] Generally, the LPGC has adopted National Fire Protection Association regulations NFPA 54 2018 and NFPA 58 2017. *See* LAC 55:IX.181A and C.

7

to switch the original tank to a 500-gallon tank. Although Mr. Wild raised the pressure to 10 psi to test for leaks, he testified that he then lowered the new tank's pressure to 5 psi before leaving. Mr. Wild also testified that, on the two occasions he was at Superking Seafood, he did not see any unsafe propane usage or any propane equipment misuse or abuse. After March 2011, Mr. Wild did not return to Superking Seafood.

Mr. Brister, the Lacox route salesman who regularly filled the propane tanks at Superking Seafood for several years leading up to the April 2016 fire, testified in his deposition that his duties included checking a percentage gauge on a customer's tank to determine how much propane to add; but, his duties did not include checking the regulator pressure gauge, which was located near the percentage gauge. He added that he did not know the appropriate pressure setting for a propane tank regulator. He also testified that he did not enter the Superking Seafood boiling room when refilling the propane tanks; Superking never alerted him to any problem with their propane system; and he did not see any unsafe practices or situations while there.

Lacox corporate representatives, Pellon Maddox and Bryan Talley, also testified by deposition. According to Messrs. Maddox and Talley, Lacox policy was to comply with National Fire Protection Association standards, including the requirement that a propane tank regulator such as that at Superking Seafood be set no higher than 5 psi. They denied knowing how the subject regulator got to 18 psi and stated that a Lacox employee would not have set the regulator at 18 psi. They confirmed that Lacox route salesmen, such as Mr. Brister, were not required to check regulator pressure gauges. They confirmed that Lacox did not recheck the regulator pressure after the initial installations in 2011, and Lacox had no record of Superking requesting a pressure test at any time after that. Messrs. Maddox and Talley admitted that, upon initial installation of the propane tanks, Mr. Wild would have checked Superking Seafood's set up to make sure everything was in "[g]ood working order, the right valves, the right hoses, [and] in a safe place[,]" but after that, Lacox

8

would not have again checked Superking Seafood's set up unless Lacox was notified of a change.

By separate affidavit, Mr. Maddox testified that Lacox did not receive any complaints and/or requests for service from Superking during their entire business relationship, nor was Lacox ever notified by the LPGC nor anyone else, of any rule non-compliance relating to the gas system, tank, or tank regulator at Superking Seafood.

In opposition to Lacox's motion for summary judgment, S&P and MUSIC claimed there are disputed factual issues as to who set the regulator at 18 psi; as to Lacox's constructive knowledge of Superking's improper use of outdoor burners inside its boiling room and improper placement of those burners too close to a combustible wall; as to Lacox's failure to lock the pressure regulator; and, as to Mr. Brister's failure to discover the improper 18 psi regulator setting on his frequent visits. S&P's and MUSIC's evidence in opposition shows as follows.

Mr. Wild admitted in his deposition that he raised the regulator's pressure above 5 psi when he installed the 500-gallon tank in March 2011. When hypothetically asked if Mr. Wild could have forgotten to lower the pressure to 5 psi, one of the Lacox corporate deponents stated that it was "a possibility that anybody could make a mistake." And, in deposition testimony, all relevant Superking representatives, including Francis Nguyen, Tuan Nguyen, Trung Nguyen, and Dau Thi Nguyen, denied changing the propane tank's regulator setting.

James Mazerat, S&P's fire and origin expert, outlined several potential causes of the fire in his affidavit, which S&P filed in support of its opposition. In his attached report, Mr. Mazerat said the increased pressure from the propane tank increased the BTU output from Superking Seafood's burners and produced a greater amount of heat on the boiling room's exterior wall, all of which contributed to the fire. Additionally, LPGC Inspector Terry McLain and Louisiana State Fire Marshal's Office Captain Henry Rayborn both testified by deposition that the increased pressure "could have" contributed to the fire.

9

In his deposition, Mr. McLain also stated that LPGC's responsibilities include inspecting natural gas installations, primarily commercial installations, to insure compliance with LPGC regulations as set forth in LAC 55.IX. He qualified his statement, however, by stating "[t]he dealer is primarily responsible for making sure everything is right." The excerpts of Mr. McLain's deposition submitted in opposition to Lacox's motion for summary judgment give no further details regarding LPGC's duties, a propane dealer's duties, or about LPGC's 2011 inspection and approval of the Superking Seafood propane installation.

Based on our *de novo* review, we find Lacox has satisfied its burden by pointing out a lack of factual support for the plaintiffs' negligence claim against it – that is, through the testimony of its corporate representatives and technicians, Lacox has shown that it was not responsible for nor did it know of any dangerous condition, unauthorized change, or alteration or modification of any propane equipment at Superking Seafood. *See* La. R.S. 40:1846H(1). We further find that, for reasons below, S&P and MUSIC have failed to produce factual support sufficient to establish that S&P can prove Lacox's negligence, and the district court correctly granted summary judgment to Lacox. *See* La. C.C.P. 966D(1) and 967B. We find, as did the district court in its reasons for judgment, that the arguments in opposition to Lacox's motion for summary judgment are purely speculative. Although factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. *Salvador v. Main St. Family Pharmacy, L.L.C.,* 17-1757 (La. App. 1 Cir. 6/4/18), 251 So.3d 1107, 1112.

First, regarding the improper regulator setting, Mr. Wild's uncontroverted testimony establishes that, when he installed the 500-gallon tank in 2011, he increased the pressure to 10 psi to test for leaks, but then lowered the pressure to the proper setting of 5 psi. There is no evidence that any Lacox employee changed the regulator pressure at any time between March 2011 and the April 2016 fire, over

10

five years later. And the fact that a Lacox corporate representative admitted to "a possibility that anybody could make a mistake" does not reasonably infer that Mr. Wild set the pressure at 18 psi, not at 10 psi, and then forgot to lower the pressure from 18 psi to 5 psi. Further, even if no Superking representative changed the regulator setting between 2011 and 2016, this is insufficient and merely speculative evidence that Mr. Wild improperly set it in 2011.

Next, there is no evidence that any Lacox employee knew of, or had constructive knowledge of, Superking's alleged improper use of outdoor burners inside its boiling room or that those burners were too close to a combustible wall. Under La. R.S. 40:1846B(3) and LAC 55:IX.139A, Lacox could not have serviced Superking Seafood with propane for the first time, if it knew Superking Seafood's system was improperly installed or in a dangerous condition. The summary judgment evidence shows that Lacox complied with this duty. Lacox corporate representatives testified that, upon an initial installation, Lacox policy was for its installers to check the customer's set up. Mr. Wild testified that he did check Superking Seafood's entire set up in 2011 and, on the two occasions he was there, he remembered nothing that he would have considered a potential safety hazard. There is no evidence to refute Mr. Wild's statement, and he did not return to Superking Seafood after March 2011. Further, Mr. Brister, the route salesman, testified that he did not enter the boiling room when he went to refill the propane tank at Superking Seafood; thus, the fact that he frequently refilled the exterior tanks over several years is not evidence that he knew Superking Seafood's boiling room set up was unsafe. *See Price,* 515 So.2d at 598; *Mitchell,* 432 So.2d at 924-25.

Next, there is no evidence that Mr. Brister had a duty to discover that the pressure regulator was improperly set, albeit his frequent trips to Superking Seafood and the undisputed proximity of the percentage gauge to the pressure gauge. S&P and MUSIC have pointed to no source imposing such a duty; Lacox had no policy requiring such; and, Mr. Brister testified that he did not even know the appropriate setting for a regulator pressure gauge. Further, as pointed out by the district court,

11

there is no evidence of when the regulator's pressure was changed to 18 psi, what the regulator setting was when Mr. Brister made his last refill before the fire, and/or if the regulator setting could have been changed *after* the last refill, such that Lacox could not have prevented the fire, even with a delivery driver trained to check pressure regulators. Thus, even if Mr. Brister would have had a duty, there is no evidence he breached that duty; there is only unsupported speculation and no actual evidence that his actions, or lack thereof, were a cause of the fire at Lee's Drive Inn. *See Salvador,* 251 So.3d at 1112 (noting that, absent evidence establishing a duty or a breach thereof, an expert's testimony that infers negligence is insufficient to create a genuine issue of material fact); *Knockum,* 402 So.2d at 97-98 (finding that, notwithstanding a propane gas supplier's duties under the LPGC's rules, plaintiffs failed to prove the supplier's actions were a cause-in-fact of the fire which led to the their injuries.)

Lastly, we find insufficient evidence to support the argument that Lacox had a duty to lock the regulator to prevent unauthorized changes to the psi setting.

## CONCLUSION

After a *de novo* review of the summary judgment evidence, we conclude Lacox has pointed to an absence of support for S&P's claims that Lacox's negligence was a cause of S&P's fire-related damages. And, S&P and MUSIC have failed to produce factual support sufficient to establish that Lacox had a duty created by knowledge of a dangerous condition, or of an unauthorized change in or failure of an existing system or connected appliances, or of an alteration or modification of propane equipment, such that it should be responsible for damages caused by any such condition. Thus, the district court correctly granted summary judgment to Lacox and correctly dismissed all claims against Lacox in these consolidated suits. Costs of the appeal are assessed one-half to S&P Investments, LLC, On Track Investments, Inc., and Amori Dila Famiglia, LLC and one-half to Mesa Underwriters Specialty Insurance Company.

**AFFIRMED.**

12